EMERLING, APPELLANT, *v.* AARON, APPELLEE.

(No. 22874—Decided November 30, 1953.)

*Messrs. Woodle & Wachtel,* for appellant.
*Mr. Herman Fishman,* for appellee.

SKEEL, J.   This appeal comes to this court on questions of law from a judgment entered for the defendant in the Municipal Court of South Euclid, Cuyahoga County, Ohio.

The amended petition alleges that the plaintiff is engaged in the interior decorating business under the trade name of A. M. Emerling & Sons at 13893 Cedar Road, Cleveland Heights, Ohio, and that pursuant to an agreement entered into between the plaintiff and

the defendant, the defendant acting through the agency of her husband, the plaintiff agreed to and did manufacture draperies for her dining room for the total sum of $503.67 as per order signed by her husband which is attached as exhibit A to the petition. The plaintiff says that the draperies were manufactured and delivered as per said agreement with the defendant, that $100 was paid thereon, and that the defendant now refuses to pay the balance of $403.67, and asks judgment for that amount.

The defendant's answer denies that Harry Aaron, defendant's husband, acted as her agent or on her behalf in purchasing the draperies and avers the draperies purchased by Harry Aaron were unexpertly made, and, for that reason, returned by Harry Aaron, now deceased, to the plaintiff and are still in his possession. The plaintiff's reply denies the affirmative allegation of the answer.

There is no dispute about the following facts as disclosed by the bill of exceptions.

The title to the house or home of Harry and Sadie Aaron, husband and wife, located at 2440 Green Road, University Heights, Ohio, is held in the name of Sadie Aaron, all the furnishings belong to her, and she is the owner of the pawn shop and army and navy store business at 406 West Superior Avenue in Cleveland, known as "Jerry's Loan Shop" where, before his death, her husband worked as a clerk. The dealings for the purchase of draperies, which are the subject of this suit, were conducted in the presence of the defendant, in which she took an active part. She helped to select the materials, to pass on the design and, after they were delivered, to determine the question of whether they were made in a workmanlike manner. Whether she or her husband paid the $100 is not

shown. At the time this transaction was concluded, the husband was in bankruptcy, having previously thereto filed a voluntary petition in bankruptcy.

The court entered judgment for the defendant upon the foregoing facts, the court finding "that the proof was not sufficient to satisfy the mind of the court that there was privity of contract between the plaintiff and defendant or that the relationship of principal and agent existed between defendant and her husband."

The plaintiff claims the following errors:

"1. The judgment of the court was contrary to law.

"2. The judgment of the court was against the weight of the evidence.

"3. The judgment of the court was not supported by sufficient evidence.

"4. The court erred in excluding from the record evidence offered on behalf of the plaintiff."

From the foregoing evidence, which is not in dispute, the liability of the defendant under the contract is clearly established. The defendant took part in all of the negotiations. The order was made out in the names of the defendant and her husband. His signature simply confirmed the order in both names. To fix liability under the agreement, no signature was necessary. Both were directly interested in securing the draperies and there is not the slightest evidence that the husband was making a gift of them to his wife or that by their conduct the plaintiff could be said to be extending credit to the husband alone.

Whether the plaintiff knew that the husband was without any financial backing and was either in or approaching bankruptcy at the time and that his wife was possessed with all the property of the family, the house, the business and, by her own testimony, all the household furnishings, including draperies purchased

from the plaintiff under the same circumstances only a few weeks before, is not determinative of the question here presented. Such facts would be important only where fraud is claimed by the plaintiff. Here draperies are being purchased for the defendant's house to become a part of that which, by her own evidence, is exclusively hers. She took part in their selection. She cannot now say she is not bound by a contract which she helped to make for her own benefit.

We recognize the fact that Section 1311.10, Revised Code, dealing with the "husband as authorized agent of wife who is owner" has no application here. That statute deals with improvement of a wife's real property under a contract made by the husband in his own name while the facts here deal with an order for personal property to be placed in the family residence owned by the wife and in which she claims to be the sole owner of all like furnishings.

In the case of *Heller* v. *Hohman* (Hamilton County, 1896), 12 C. C., 216, 5 C. D., 338, where the husband contracted for repairs in his own name to be made on his wife's property and where thereafter he had paid a part of the bill, the court held:

"A wife held to be personally liable for repairs to a building on her land, made under contract with her husband, but with her knowledge and without protest from her.—Sec. 3192, Rev. Stat." (Section 8318, General Code; Section 1311.10, Revised Code.)

In the opinion, on page 217, the court said:

"Independently of any statutory provision, we incline strongly to the opinion that on this state of facts the wife would be liable for the balance due on the work. The facts alleged point very strongly to the conclusion that the husband was acting for the wife as her agent."

We see no distinction in theory between the application of such rule as to real property and that of furnishing of personal property for the exclusive use as furnishings in the wife's property where, under the undisputed evidence, she claims ownership of all like property in the house and at the time the contract was made and was present and took part in the negotiations for their purchase. We hold that upon the undisputed facts this defendant was a party to the contract made with the plaintiff to make the draperies for defendant's dining room.

The remaining question has to do with whether the plaintiff carried out the obligations of his contract and furnished draperies as ordered. This question did not engage the attention of the trial court as is shown by its journal. It is the claim of the defendant that the draperies were improperly made so that the plaintiff breached his contract. The plaintiff admits that there were some errors in measurements, but claims that these mistakes were immediately corrected when called to plaintiff's attention and that they have ever since been ready for delivery, but that the defendant has refused to take delivery.

The draperies which plaintiff made for defendant were "special goods." Under Section 1315.64, Revised Code, if the buyer wrongfully refuses to take delivery, the seller may treat the goods as the buyers and maintain an action for the price. Inasmuch as there was no specific time within which the contract was to be performed, the plaintiff had a reasonable time to make the necessary corrections so that the draperies would satisfy the terms of the purchase order. The letter of defendants attempting to rescind the contract would, after it was received by plaintiff, relieve him of any obligation to thereafter tender delivery.

The case is therefore remanded for trial on the questions of whether plaintiff performed his contract in a workmanlike manner 'and whether the draperies, as repaired, satisfy the terms of the contract. If they do, then plaintiff is entitled to recover. If not, then judgment must be for the defendant.

The judgment is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

Hurd, P. J., and Kovachy, J., concur.